IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EMMA WALTERS, } | |
| } | |
| Plaintiff, } | |
| } | CIVIL ACTION NO. |
| v. } | 06-AR-1094-S |
| } | |
| AUTOZONE, INC., } | |
| } | |
| Defendant. } | |

**MEMORANDUM OPINION**

The court has for consideration the motion of defendant, Autozone, Inc. ("Autzone"), for summary judgment on the action brought by plaintiff, Emma Walters ("Walters"), for sexual harassment and for retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and for the tort of outrage. For the reasons that follow, Autozone's motion will be granted.

*Facts*[1]

Autozone is a corporation that performs auto repairs and sells automotive parts and accessories through its stores in Alabama and other states. Walters is a former employee of Autozone at its facility in Center Point, Alabama. She first worked at various Autozone stores in Alabama from May 2002 until she left in February 2005 to work for a competing auto-parts store. She reapplied with

---

[1] The parties dispute some of the facts. For purposes of this memorandum opinion, the court will recite disputed facts in the light most favorable to Walters, giving her the benefit of every doubt.

Autozone in May 2005.  Autozone rehired her, and she began work as a commercial specialist at the Center Point store on May 27, 2005. As a commercial specialist in Center Point, Walters serviced approximately 25 commercial accounts, including BFS Commercial & Retail LLC's Firestone Service Center ("Firestone").  One of Firestone's service managers was Steven Sherer ("Sherer"), an acquaintance of Walters whom Walters listed as a reference on her most recent application for employment with Autozone.

During the course of her employment at Center Point, Walters was required to interact with Sherer on a fairly regular basis. Between June 8, 2005 and July 14, 2005, Sherer made two inappropriate sexual remarks to Walters, both of which occurred over the telephone:

- On June 8, 2005, Sherer told Walters that "if [she] came by his shop after hours he would bend [her] over the tires and fuck [her] good and then [she] could have all of his business."
- On a Saturday prior to July 14, 2005, Sherer called to order a part and said "you have a Thirsty Thursday, how about a blowjob Saturday."

Walters first informed Autozone of Sherer's remarks on June 14, 2005, when she discussed them with store-manager Eric Virgin. Virgin told Walters to report Sherer's conduct to acting District Manager Carlos Rodriguez, and Rodriguez told Walters to report it

2

to Regional Human Resources Manager Jennie Anderson. Walters met with Anderson later that day, June 14, 2005, to make a formal complaint about Sherer's conduct.

When asked what she felt needed to happen next, Walters told Anderson that "either [Sherer] needs to be transferred or I do. I don't want any contact with [Sherer] in any way." Anderson offered Walters an opportunity to transfer to another Autozone store working the same hours at the same rate of pay, but Walters refused this offer. Anderson then told Walters not to answer the commercial phone line for the time being, and instead to allow Virgin to answer it, so that she would not have to speak to Sherer if he called.

At approximately 10:00 a.m. on June 15, 2005, the day after Walters spoke with Anderson, Sherer called the commercial phone line at Autozone's Center Point facility. Walters answered the phone, contrary to Anderson's instructions, because Virgin "refused" to answer it. During this conversation, Sherer said "you had a thirsty Thursday, how about a fucking Friday."

Anderson contacted Firestone District Manager Ken Hall to inform him of Sherer's conduct at some time between Saturday, July 16 and Monday, July 18. Walters was not subjected to any unwelcome remarks from Sherer after Anderson had this conversation with Hall. Walters, who is not a first-time Title-VII plaintiff, nevertheless filed an EEOC charge alleging sexual harassment against Autozone on

August 18, 2005.

On September 20, 2005, Rodriguez asked Walters to accept a transfer from Autozone's Center Point store to its Tarrant store. Walters responded by submitting a letter stating "I'm accepting the transfer due to circumstances and conditions beyond my control I accept the transfer to the Tarrant store." After her transfer, Walters worked at the Tarrant store at the same rate of pay and with the same number of approved overtime hours as she did at Center Point. Although her number of approved overtime hours remained unchanged, the actual number of hours Walters worked decreased from 50 hours per week to 45 hours per week. In addition, Walters no longer had a driver to deliver parts to commercial customers after the transfer. Anita Burns, the manager of Autozone's Tarrant location, and Alexis Thomas, the new District Manager, made the scheduling decisions for employees working in Tarrant. Burns made the decision to reassign Walters's driver to the retail side of the store. Walters never discussed her complaints about Sherer with Burns or with Thomas.

On or about January 13, 2006, after being recruited into a higher-paying commercial position at Advance Auto Parts in Tarrant and after giving a two-week notice to Burns, Walters resigned her position at Autozone.

Walters filed this action against Autozone, Firestone, and Sherer on June 6, 2006. She asserted claims for sexual harassment

and hostile work environment in violation of Title VII, unlawful retaliation in violation of Title VII, and the tort of outrage against Autozone.  Against Firestone, she asserted claims for negligent hiring, training, supervision, and retention; invasion of privacy; and outrage.  She brought claims for invasion of privacy and outrage against Sherer.  Walters settled her claims against Sherer and Firestone for unspecified amounts on January 10, 2007 and April 24, 2007, respectively.  She voluntarily abandoned her outrage claim against Autozone in her response to Autozone's motion for summary judgment.

*Summary Judgment Standard*

In considering a Rule 56 motion, the court must construe the evidence and make factual inferences in the light most favorable to the nonmoving party.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  The court may enter summary judgment only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242-43 (1986) (citations omitted).  This determination involves applying substantive law to the substantive facts construed in favor of the non-movant.

*Analysis*

## I. Hostile Work Environment Sexual Harassment

To establish a *prima facie* case of hostile work environment sexual harassment under Title VII, Walters must demonstrate a basis for holding her employer, Autozone, liable for the harassment. *Breda v. Wolf Camera & Video*, 222 F.3d 886, 889 (11th Cir. 2000); *see Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir.1999) (en banc), *cert. denied*, 529 U.S. 1068, 120 S.Ct. 1674, 146 L.Ed.2d 483 (2000). Employer liability exists when the employer knew (had actual notice) or should have known (had constructive notice) of the harassment and failed to take remedial action. *Breda*, 222 F.3d at 889; *see Henson v. City of Dundee*, 682 F.2d 897, 905 (11th Cir. 1982). The other elements of a *prima facie* case of hostile work environment sexual harassment require Walters to establish that (1) she is a member of a protected group; (2) she was the subject of unwelcome sexual harassment; (3) the harassment occurred because of her sex; and (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment. *Mendoza*, 195 F.3d at 1245. Autozone concedes for purposes of its summary-judgment motion that Walters is a member of a protected group (female), that she was subjected to unwelcome sexual harassment because she is a female.

The court concludes that Autozone is entitled to judgment on Walter's sexual-harassment claim for three reasons. First and most

importantly, an employer is not a guarantor that persons not in its employ or under its control will not make off-color remarks on the telephone. Sherer was not an employee of Autozone, so Autozone cannot be vicariously liable under Title VII, which is directed at employers, for Sherer's conduct. It neither encouraged nor condoned what Sherer did and could not have anticipated it.

Second, Sherer's offensive conduct was not sufficiently severe and pervasive to constitute actionalble sexual harassment, even if attributed to Autozone. In order to meet this threshold, a plaintiff's subjective perception of the objectionable conduct must be objectively reasonable. *Mendoza*, 195 F.3d at 1246. The objective component is a fact-intensive inquiry, but the Eleventh Circuit has explained that the following four factors should be considered in determining whether harassment objectively altered an employee's terms or conditions of employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Id*. Sherer was a friend or acquaintance of Walters before he made the offensive remarks, and his three isolated comments, all of which were made over the phone, fall short of reaching the level of frequency necessary to establish a severe and pervasive pattern of conduct. As stated, Sherer was not Walters's employer or even her co-

employee, and he did not work at the same physical location as Walters, so the effect of the three remarks could not "unreasonably" interfere with Walters's job performance. Courts regularly use the device of summary judgment to "police the baseline for hostile environment claims," 195 F.3d at 1244, and Walters's allegations and proof fall so short of establishing hostile work environment that granting Autozone's motion for summary judgment is absolutely necessary.

    The third reason, if another reason is needed, that Autozone is entitled to summary judgment is that despite the fact that Sherer was not an Autozone employee, Autozone took reasonable, prompt, and effectual steps to remedy the situation. Anderson offered Walters an opportunity to transfer at the same pay rate the same day that Walters brought the issue to Autozone management, and Walters strangely refused that offer even though she herself suggested it. When Walters initially refused, Anderson told Walters not to answer the commercial phone line until she could resolve the issue with Firestone, but Walters nevertheless answered that line when Sherer called the next day and made his third and final offensive remark. She says that Virgin refused to answer the phone, but she does not contend that Virgin told her that she had to answer it. And after Anderson spoke to Firestone manager Hall two to four days after Walters complained to Autozone management, Sherer did not again engage in any conduct that Walters found

objectionable.  Walters is correct that Sherer's conduct was uncouth and offensive, providing a good basis for reaching a settlement of her disputes with Sherer and Firestone.  But Autozone took prompt, effective steps to diffuse the situation, and there is no basis whatsoever to hold it liable for Sherer's conduct.  *See Breda*, 222 F.3d at 889 (employer liable only when it failed to take remedial action in the face of actual or constructive notice).

## II.  Retaliation

In her other claim against Autozone (besides the tort-of-outrage claim that has been abandoned), Walters contends that Autozone retaliated against her for engaging in activity protected by Title VII.  In order to establish a *prima facie* case of retaliation under Title VII, Walters must prove that (1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment action.  *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 586 (11th Cir. 2000).  If she makes out a *prima facie* case, Autozone must then articulate a legitimate, non-retaliatory reason for its actions, which Walters must then demonstrate are pretextual if she is to prevail.  *Sullivan v. National R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999).  There can be no dispute that Walters engaged in statutorily protective activity, but Autozone's motion for summary judgment is due to be

granted because there is no evidence of a causal connection between any protected activity and any allegedly adverse employment action.

In order to constitute an "adverse employment action" for purposes of a Title VII retaliation claim, an action must be "an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Gupta*, 212 F.3d at 587. Walters says that Autozone's transferring her to the Tarrant store, and its reducing her hours and "refusing" to provide her with a commercial driver after the transfer, constitute adverse employment actions. She also says that she was constructively discharged. Even if the court accepts her characterization that Autozone "forced" rather than requested her to transfer stores, it is undisputed that Walters received the same rate of pay and was authorized to work the same amount of overtime in Tarrant as she did in Center Point. She held the same title and had essentially identical duties after the transfer. The transfer was, after all, a direct response to Walters's complaint about Sherer. It could not have been both an inadequate response and a retaliatory act. Even if Walters unwillingly accepted the transfer, this action of Autozone falls short of the necessary threshold as expressed in *Gupta*. With respect to Autozone's not providing Walters with a commercial

driver in Tarrant, even if the court takes for granted Walters's characterization that Autozone "refused" to provide her with one, this was not an ultimate employment action, did not alter Walters's compensation, terms, conditions, or privileges of employment, did not deprive Walters of employment opportunities, and did not adversely affect Walters's status as an employee.

Only Autozone's reduction of Walters's actual hours arguably qualifies as an adverse employment action, because, as will be discussed below, there is no evidence of constructive discharge. While it is true that Walters was approved to work five hours of overtime in Tarrant just as she was at Center Point, the actual number of hours she worked each week dropped from 50 to 45 after she transferred. This reduction in hours could be construed as an alteration of Walters's compensation or employment terms, although there is no evidence that Autozone ever promised Walters that it would schedule her to work her maximum number of approved overtime hours, so drawing the opposite conclusion would be just as reasonable. Giving Walters the benefit of every doubt and assuming that the reduction in her actual hours constitutes an adverse employment action, there is no evidence of any causal connection between her complaints to Autozone or the EEOC and the reduction in her hours. Walters correctly states the applicable legal standard — that a plaintiff must show that the decisionmaker was aware of the protected conduct, and that the protected activity and the

adverse action were not wholly unrelated.  *See Gupta*, 212 F.3d at 590.  But Walters does not attempt to show that Burns or Thomas, the only individuals who made the scheduling decisions in Tarrant, had any idea that Walters had ever made any complaints about sexual harassment.  Moreover, Walters testified that she does not recall ever speaking to Burns about Sherer or about her EEOC charge.  Since there is no evidence of any causal connection between her complaints and her reduction in hours, Walters cannot establish a *prima facie* case of retaliation.

Even if the court assumes that the reassignment of Walters's driver qualifies as an adverse employment action, which it does not, this fact does not support her retaliation claim for the same reason as Walters's reduction in hours does not support it.  Walters admits that Burns was the sole decision maker with respect to the reassignment.  Since there is no evidence that Burns — who managed a different facility than the store where the alleged harassment took place — was aware of Sherer's conduct or Walters's complaints, there can be no causal connection between the protected conduct and the employment action.

Moreover, even if this court assumes *arguendo* that Walters's transfer constituted an adverse employment action, there is no evidence to discredit Autozone's proffered legitimate, nondiscriminatory reason for requesting that Walters accept the transfer.  Autozone says that it asked Walters — who had expressed

12

affirmative interest in obtaining a transfer when she spoke to Anderson on July 14, 2006 — to transfer to the Tarrant store, where she had previously worked and received positive performance reviews, in order to increase sales at the Tarrant location. Walters does not respond to Autozone's proffered explanation, and instead merely reargues her *prima facie* case. This is insufficient to establish pretext. *See Crawford v. City of Fairburn*, 482 F.3d 1305, 1309 (11th Cir. 2007).

Walters finally argues that she suffered an adverse employment action because she was constructively discharged. "To show constructive discharge, the employee must prove that [her] working conditions were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Wardwell v. School Bd. of Palm Beach County*, 786 F.2d 1554, 1557 (11th Cir. 1986). Viewing the facts in the light most favorable to Walters, the working conditions at Autozone did not come close to being intolerable. The evidence is clear that Walters left Autozone of her own volition, in order to pursue a more desirable position elsewhere. Her claim of constructive discharge is the ultimate in wishful thinking.

*Conclusion*

Judging from the undisputed facts, Walters's real disputes were with Sherer and with Firestone. She has already reached *pro tanto* settlements with both of them. Autozone's reactions to

Walters's complaints about Sherer not only were reasonable, but they were in many ways commendable. For the reasons discussed above, Autozone's motion for summary judgment will be granted. Because the court would reach the same conclusion regardless of whether it considers the evidence that is the subject of Walters's motion to strike evidence proffered by Autozone, Walters's motion to strike will be deemed moot.

    DONE this 12th day of June, 2007.

                                         /s/ William M. Acker, Jr.
                                         WILLIAM M. ACKER, JR.
                                         UNITED STATES DISTRICT JUDGE